**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SHELTON LAMONT WOOD,                    *

Plaintiff,                              *

v.                                      *        Civil Action No. ELH-23-1705

SANDRA J. BOETTINGER RN, et al.,        *

Defendants.                             *
                                       ***

## MEMORANDUM OPINION

Shelton Lamont Wood, a self-represented Maryland prisoner, is incarcerated at Western Correctional Institution ("WCI"). On June 22, 2023, he initiated a civil rights action against multiple defendants, pursuant to 42 U.S.C. §1983, alleging a denial of medical care following an injury he suffered at WCI. ECF 1. On August 1, 2023, I directed Wood to file an amended complaint. ECF 6, ECF 7. After several extensions, it was received on April 12, 2024 (ECF 21, ECF 21-1), with exhibits. ECF 21-2 to ECF 21-4.

The caption of the case reflects that Wood sued R. Shane Weber, Warden. ECF 21-1 at 1. But, the text names as defendants Sandra Boettinger, RN, and Megan Dubrawsky, RN, nurses employed by "the medical contractor, YesCare," as well as the "YesCare Scheduler" and "YesCare John/Jane Doe" defendants, who are medical providers. *See id.* ¶¶ 2-5.

In Count 1, Wood asserts a violation of his rights under the Eighth and Fourteenth Amendments to the Constitution, pursuant to 42 U.S.C. § 1983. ECF 21-1 at 14. He alleges "Medical Negligence" in Count 2. *Id.* at 15.

By Order of July 9, 2024, I directed that the amended complaint may proceed as the operative pleading against defendants Boettinger; Dubrawsky; YesCare Scheduler; and YesCare John/Jane Doe Medical Providers at WCI. ECF 25. Service was directed for defendants

Boettinger and Dubrawsky, and Wood was advised that if he ascertained the identity of the unknown defendants during the pendency of this action, he may file a motion to amend his complaint to name additional parties. *Id.* at 2. To date, Wood has not identified additional parties.

Defendants Boettinger and Dubrawsky have moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) or, alternatively, for summary judgment under Rule 56. ECF 28. It is supported by a memorandum (ECF 28-1) (collectively, the "Motion"). Both Boettinger and Dubrawsky also filed declarations. ECF 28-2 (Boettinger); ECF 28-3 (Dubrawsky).

Wood has responded to the Motion and has attached a Declaration pursuant to Federal Rule 56(d), requesting discovery. ECF 33, ECF 33-1. The defendants have replied and oppose Wood's request for discovery. ECF 35.

In addition, in November 2024, Wood filed a second motion for appointment of counsel. ECF 34. On June 11, 2025, I directed the appointment of pro bono counsel. ECF 40. But, a pro bono lawyer has not yet been located for Wood.

Upon review of the record, exhibits, and the applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6. (D. Md. 2023). For reasons that follow, Wood's request for discovery will be granted and defendants' Motion will be denied, without prejudice.

## I. Procedural Background

Wood filed suit on June 22, 2023. ECF 1. As noted, Wood filed an amended complaint in April 2024. ECF 21; ECF 21-1. On September 6, 2024, defendants Boettinger and Dubrawsky moved to dismiss or, in the alternative, for summary judgment. ECF 28. Wood's response in opposition to the motion was received by the court on November 18, 2024 (ECF 33), and defendants filed a reply on December 2, 2024. ECF 35.

On June 2, 2025, while the Motion was pending, the Court received correspondence from Wood requesting assistance with respect to a letter he had received from a law firm.  ECF 37; ECF 37-1.  That letter pertained to Chapter 11 bankruptcy proceedings of Tehum Care Services, Inc. ("Tehum") d/b/a/ Corizon Health ("Corizon"), pending in the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-90086 ("Bankruptcy Case").  Counsel for YesCare has verified that the letter Wood received is from the firm that represents YesCare in the bankruptcy proceedings.  ECF 41 at 1.  Defendants Boettinger and Dubrawsky were previously employed by YesCare. *See* ECF 28-2, ¶ 2; ECF 28-3, ¶ 2.

The Court does not know the precise relationship between Tehum, Corizon, and YesCare. But, it is believed that YesCare is a successor to Corizon.  *See* Bankruptcy Case, ECF 2014 at 43; *id.*, ECF 2160 at 1.

The letter from YesCare's counsel to Wood (ECF 37-1) advises, *inter alia*, that Wood's federal case (i.e., this case) "must be stayed . . . ."  *Id.* at 1. Further, the letter indicates that plaintiff missed the Voting Deadline of February 21, 2025, and he failed to "opt out" of the Plan of Reorganization.  *Id.*

The letter forwarded to the Court by Wood was the first indication to the Court that bankruptcy proceedings involving Corizon or YesCare may implicate the action in this case against former employees of YesCare.  Due to this Court's concern about the means by which notice was provided to Wood in the Bankruptcy Case about Bankruptcy Case deadlines; his right to opt out from the Plan of Reorganization; his self-represented status; and whether this action must be stayed as to the defendants, I issued an Order on June 9, 2025, directing YesCare's counsel in this case to file a status report with the Court, due by June 13, 2025, addressing the impact of the Bankruptcy Case on Wood's § 1983 case.  ECF 39. I also sent a copy of the Order to Judge Christopher Lopez,

who is presiding over the Bankruptcy Case. *Id.* In addition, on June 11, 2025, I directed the Pro Bono Coordinator to locate pro bono counsel to represent Wood in this litigation. ECF 40.

On June 12, 2025, YesCare's counsel filed a lengthy status report, as directed. ECF 41. Counsel advised the Court that on May 16, 2025, in the Bankruptcy Case, Tehum filed an omnibus motion to enjoin the prosecution of cases ("Motion to Enjoin") that are similar to Wood's. *Id.* In particular, it appears that the Plan of Reorganization seeks to enjoin the pursuit of lawsuits against former health care employees of the debtor and YesCare, such as Boettinger and Dubrawsky. *Id.* at 1. The Plan of Reorganization provides that the Debtor, YesCare, and current and former employees are among the "Released Parties." *Id.* at 2. *See In re Tehum Care Services, Inc.*, ECF 2160.

In addition, YesCare's counsel stated that the Motion to Enjoin was filed "to clarify the impact" of the Reorganization Plan "on specific lawsuits because the Confirmation Order and Plan do not identify the specific lawsuits impacted by the Plan's Injunctions and Releases." *Id.* at 1. However, the Bankruptcy Court has not yet determined whether the case sub judice should be stayed. *Id.*

On June 30, 2024, the Court held a telephonic status conference with counsel for the defendants and Patrick A. Thronson, a Maryland attorney who is handling a pending lawsuit for another plaintiff in this District against YesCare and related parties. Pending appointment of pro bono counsel for Wood, Mr. Thronson agreed to represent Wood on a limited and interim basis with respect to the Motion to Enjoin, which was then to be held in the Bankruptcy Court on July 2, 2025. *In re Tehum Care Services, Inc.*, ECF 2266. Counsel for YesCare did not oppose Mr. Thronson's interim appointment. ECF 44. On July 1, 2025, the Court appointed Mr. Thronson as interim counsel while continuing its efforts to find pro bono counsel for Wood. ECF 44.

On July 2, 2024, the hearing on YesCare's Motion to Enjoin took place in the Bankruptcy Court. To my knowledge, a decision has not yet been issued. *In re Tehum Care Services, Inc.*, ECF 2332. Moreover, as of this date, no motion for stay of proceedings has been filed in this case. Accordingly, I will address the pending Motion.

## II. Factual Background[1]

Wood alleges that on March 29, 2022, while walking over a "dog gate," his leg was caught and he fell to the ground and injured his right ankle. ECF 21-1, ¶ 6. He was taken to the WCI infirmary, received an x-ray, and then was sent off-site to the emergency room for treatment of an "acute fracture." *Id.* The x-ray showed a fracture of the distal fibula at the lateral malleolus with slight displacement and acute avulsion fracture of the medial malleolus and subluxation at the tibia-talar joint. *Id.* ¶ 7. RN Karen Ramsbury reported that Wood had an unsteady gate and he was issued crutches. *Id.* ¶ 8. Wood was admitted to the infirmary, put on a medical hold pending evaluation, and placed on "no work status." *Id.* ¶ 9.

Wood was discharged on March 30, 2022, with a closed unspecified fractured ankle, his right foot was in a splint and an ACE bandage, and he was given crutches to return to his housing unit. *Id.* ¶ 11. Wood's treatment plan included pain management, non-weight bearing of the affected side, elevation of the affected ankle, use of an ice pack, crutches for walking, a follow-up appointment with an orthopedic doctor in five to seven days, and a consultation with an orthopedic surgeon. *Id.* ¶ 10. On that date, "medical staff" submitted a consultation request for an initial visit with an orthopedic surgeon to assess the fractured ankle. *Id.* ¶ 12.

---

[1] Neither plaintiff nor defendants have submitted medical records with their pleadings. But, Wood's detailed allegations (ECF 21-1) appear to have originated from medical records.

On March 31, 2022, Boettinger denied the consultation request, stating that "medical necessity [was] not demonstrated" for the orthopedic consult and an alternative treatment plan ("ATP") was proposed for Wood to see a podiatrist. *Id.* ¶ 13. Boettinger's ATP was submitted to Dr. Getachew, the Statewide Regional Medical Director, for review. *Id.* On April 3, 2022, Wood submitted a sick call request stating that his right foot was hurting, his splint was loosening, and he should have seen a doctor. *Id.* ¶ 14. On April 7, 2022, Boettinger reported that Dr. Getachew approved the ATP on April 6, 2022, citing "minimal displacement" and recommended a repeat x-ray and podiatry evaluation. *Id.* ¶ 15. Mr. Wood's sick call slip was not processed until April 26, 2022. *Id.* ¶ 14.

One month later, on May 6, 2022, Wood had a telemedicine consultation with Dr. Getachew. *Id.* ¶ 17. During the consultation, Dr. Getachew revisited the March 29, 2022 x-ray report, which showed an acute fracture of the distal fibula at the lateral malleolus with mild displacement and an acute avulsion fracture of the medial malleolus with subluxation of the TBI-talar joint. *Id.* ¶ 19. Dr. Getachew discussed the x-ray findings with Dr. Berger, "the ankle foot specialist," and then recommended that Wood see an orthopedic surgeon "as soon as possible." *Id.* at ¶ 20. Dr. Getachew then submitted a consultation request for an orthopedic evaluation. *Id.*

Dubrawsky issued an addendum on May 9, 2022, providing that the consultation for an orthopedic evaluation had been approved on May 6, 2022. *Id.* ¶ 21. On May 16, 2022, Wood was evaluated by DPM Daniel A. Perez, an orthopedic surgeon, who diagnosed him with a sprain of the tibiofibular ligament of the right ankle and a displaced fracture of the lower leg. *Id.* ¶ 22. Dr. Perez proposed an open reduction internal fixation of the right fibula and repair of the deltoid ligament. *Id.*

On May 18, 2022, Boettinger approved the surgery recommended by Dr. Perez. *Id.* ¶ 23. On May 23, 2022, nearly two months after Wood's injury, Wood underwent surgery at a hospital outside the prison and was returned to the prison infirmary later that same day. *Id.* ¶ 25. Wood was splinted and instructed not to put any weight on his right leg, to use a bone stimulator on his right lower leg three hours per day, and to elevate his leg on a wedge and apply ice. *Id.*

Boettinger approved Wood's first post-operative appointment on June 7, 2022, which took place on June 13, 2022, with Dr. Perez. *Id.* ¶¶ 28, 30. Dr. Perez concluded that the leg was healing properly and requested a follow up visit with Wood in three weeks. *Id.* ¶ 30. On June 15, 2022, Boettinger approved Wood's second follow up appointment. *Id.* ¶ 33. Wood was discharged from the infirmary on June 16, 2022, at his request, which included discontinuing the daily three-hour bone stimulator treatments. *Id.*

Wood had another follow up appointment with Dr. Perez on July 1, 2022. *Id.* ¶ 34. An x-ray showed the fracture was aligning and healing well. *Id.* Dr. Perez recommended a third follow up appointment in three weeks and continuing exercises. *Id.* On July 15, 2022, Wood submitted a sick call slip asking when he will next see the surgeon and start physical therapy. *Id.* ¶ 35. RN Karen Coleman processed the sick call slip on July 16, 2022, and noted that neither the consult for the orthopedic visit nor physical therapy had been submitted and noted to contact "Dr. Daee ASAP." *Id.* ¶ 36.

On August 21, 2022, Wood requested a sick call visit. *Id.* ¶ 37. He complained that his right ankle was hurting, it was still swollen, and he had a sore on his right foot. *Id.* Wood spoke with RN Evans Budu on August 30, 2022, who recommended that he see a provider for further evaluation. *Id.* ¶ 38. Wood was seen by Dr. Masoud Djahanmir on September 1, 2022. *Id.* ¶

39.  He recommended home exercise and stated that he would request a consultation for another follow up appointment.  *Id.*

Dr. Djahanmir concluded on September 7, 2022, that Wood may benefit from physical therapy "to obtain joint fluidity."  *Id.* ¶ 40.  On September 9, 2022, Boettinger approved Wood for a physical therapy evaluation.  *Id.* ¶ 41.  And, on September 15, 2022, Wood was evaluated by Physical Therapist Stephen Ryan, who recommended ten sessions for right hip and ankle strengthening.  *Id.* ¶ 42.

On September 20, 2022, Boettinger approved Wood for a follow up orthopedic appointment.  *Id.* ¶ 43.  Dr. Djahanmir evaluated Wood again on September 28, 2022.  *Id.* ¶ 45.  He provided Wood with a cane and recommended physical therapy.  *Id.*  And, on September 29, 2022, Wood was seen by Michael Berger, DPM, who agreed with the referral for physical therapy for right ankle strengthening.  *Id.* ¶ 46.

Wood was seen by Dr. Perez on November 10, 2022.  *Id.* ¶ 47.  An x-ray showed proper alignment and healing of the right ankle.  *Id.* ¶ 47.

A physical therapy consult was generated on November 10, 2022, nearly two months after Wood was assessed by the physical therapist.  *Id.* ¶ 49.  On November 11, 2022, Wood was seen by Dr. Djahanmir, who noted that Wood was scheduled for physical therapy.  *Id.* ¶ 48.  Janet Clark, NP, issued a note on December 1, 2022, indicating that Wood's injury was "stable" but that he needed to work on range of motion.  *Id.* ¶ 49.  At the infirmary on December 19, 2022, Wood requested physical therapy, which had not yet taken place.  *Id.* ¶ 50.

On January 23, 2022, Wood submitted a sick call request, complaining of pain in his right hip, knees and lower back.  *Id.* ¶ 52.  At the infirmary on January 25, 2023, Wood complained

of pain in his hip and reported that he had still not received physical therapy, nor had he been sent to see the orthopedic surgeon for a follow up appointment. *Id.* ¶ 53.

On the morning of January 26, 2023, Wood was brought to the infirmary in a wheelchair, complaining of pain in his lower back and hip. *Id.* ¶ 54. He was seen later that morning by Dr. Djahanmir. *Id.* ¶ 55. On February 1, 2023, Boettinger approved one session of physical therapy for a Home Exercise Program, which took place on February 6, 2023. *Id.* ¶¶ 56, 58.

Dubrawsky issued an approval on February 2, 2023, for an orthopedics follow up appointment, which took place with Dr. Perez on March 6, 2023. *Id.* ¶¶ 57, 59. An x-ray showed the fractured bone was aligning well and healing properly, but that Wood had limited movement in the foot. *Id.* ¶ 59. Dr. Perez advised Wood to start bearing weight on his foot as tolerated, continue exercises, and recommended follow up appointments as necessary. *Id.*

On April 28, 2023, more than one year after Wood was injured, Wood submitted a sick call slip complaining of continued right ankle, knee, and hip pain. *Id.* ¶ 60. At the sick call visit on May 2, 2023, Wood requested additional physical therapy. *Id.* ¶ 61. The "Scheduler was notified to schedule Mr. Wood for a provider visit." *Id.*

Wood submitted another sick call slip on May 27, 2023, complaining of pain. *Id.* ¶ 62. On May 31, 2023, Nurse Steward processed the request form and noted that Wood needed to be referred to the provider again. *Id.* ¶ 62.

Wood was seen by Nurse Steward on May 31, 2023. *Id.* ¶ 63. Steward observed that Wood had difficulty walking and noted that he had been referred to a provider earlier in the month and had not yet been seen. *Id.* Nurse Steward consulted with the wound care nurse to arrange a consultation with the foot doctor and to schedule a visit. *Id.* Steward also referred

Wood to the on-site provider to order supplies such as a proper insole and an ankle brace. *Id.* The "Scheduler" was notified of these actions. *Id.*

On June 6, 2023, Wood had a chronic care telemedicine visit with Dr. Tesfaye. *Id.* ¶ 63. The doctor observed edema in Wood's right ankle. *Id.* On July 31, 2023, Wood requested sick call due to pain in his right leg, knee, and foot. *Id.* ¶ 65. Wood had a sick call visit with RN Compton-Don on August 2, 2023, and reported that he had not received follow up after surgery, a sleeve for his right leg, and that his pain medication was not working. *Id.* ¶ 66. Compton-Don noted that Wood had a steady gait but favored his right ankle, and planned to refer Wood to a provider for further evaluation. *Id.*

Wood was seen by Dr. Djahanmir on August 31, 2023, who ordered repeat x-rays, Tylenol as needed, referral to a podiatrist for evaluation for shoe inserts, renewal of a cane permit, and noted he would look into why Wood's physical therapy was stopped after one visit. *Id.* ¶¶ 67, 68. Wood had an x-ray of his right hip on September 5, 2023. *Id.* ¶ 70. Dr. Scott Logan reported there was no evidence of an acute osseous fracture but some narrowing of the hip joint space. *Id.* Dr. Logan also suggested that CT scans and MRIs are better at finding hidden fractures after an injury and might be considered if needed. *Id.*

On January 9, 2024, Wood requested a sick call for feet, knee, hip, and back pain. *Id.* ¶ 72. He was seen by Nurse Pryor on January 31, 2024. *Id.* ¶ 73. Nurse Pryor noted that Wood's shoe insoles were peeling and had holes in them and he needed to see a provider for pain issues. *Id.* On February 5, 2024, a consultation request was submitted for podiatry care. *Id.* ¶ 74.

Wood filed several Requests for Administrative Remedy ("ARP") pertaining to delays in receipt of medical care. ECF 21-2. Notably, on April 13, 2022, Wood filed an ARP complaining that he had not been sent to a surgeon as recommended by the physician at the emergency room.

ECF 21-2 at 4.  On November 21, 2022, the ARP was determined to be meritorious because Wood had not obtained a consult with an orthopedic surgeon until May 16, 2022, although it was recommended that this take place five to seven days after the Emergency Room visit on March 30, 2022.  *Id.* at 6.

Boettinger and Dubrawsky each submitted a Declaration pertaining to their role in Wood's medical care.  ECF 28-2; ECF 28-3.  Boettinger states that she was previously employed as a Utilization Management ("UM") Nurse by Corizon Health and YesCare Corp. ECF 28-2, ¶ 2.  As of August 1, 2024, she became employed by Centurion as a UM Nurse.  *Id.* ¶ 2.

Boettinger states that she does not diagnose medical conditions or formulate treatment plans as that is beyond the scope of her nursing license.  *Id.* ¶ 4.  Notably, she asserts that she is not a medical provider and has never provided any medical or nursing care to Wood.  *Id.* Boettinger describes her role as conducting an initial review of consultation requests, gathering information including notes, radiology reports and "labs," and then submitting the request to the UM Medical Director ("UMMD") to make a determination regarding the consultation request.  *Id.* ¶ 5.  According to Boettinger, only the UMMD can issue an Alternative Treatment Plan, and Boettinger's role was only to document the ATP or other decision made by the UMMD in the electronic medical record.  *Id.*  It was within Boettinger's scope of duties to approve requests that did not require medical decision-making, "such as a routine post-op follow-up."  *Id.* She denies approving or denying any of Wood's consultation requests for an orthopedic visit, surgery, or physical therapy.  *Id.*

Dubrawsky was similarly employed as a Utilization Management ("UM") Nurse by

Corizon Health and YesCare Corp.  ECF 28-3, ¶ 2.  And, as of August 1, 2024, she was employed by Centurion as a UM Nurse.  *Id.*

According to Dubrawsky, she does not diagnose medical conditions or formulate treatment plans, as that is beyond the scope of her nursing license.  *Id.* ¶ 5.  She describes her role as "administrative in nature."  *Id.* ¶ 4.  When Dubrawsky receives a consultation request she gathers the documents and information submitted by the onsite provider with the request and forwards it to the UMMD to review.  *Id.* ¶ 5.  She recounts that the UMMD would then either approve the request, request more information, or return than ATP, suggesting a different course of action.  *Id.*  If the UMMD requested additional information, Dubrawsky would send that request to the site and, when the information was returned, she would forward it to the UMMD to make a decision.  *Id.*

Dubrawsky explains that only the UMMD can make an ATP decision, but Dubrawsky's name appears on the record because she was the one to document the UMMD decision.  *Id.*  Dubrawsky could only approve a request that met the "Abbreviated Review criteria," which are typically requests that do not require medical decision making, "such as first post-op follow-up after surgery."  *Id.* ¶ 6.

### III.  Standard of Review

#### A.

Throughout the briefing, Wood has been self-represented.[2]   Therefore, Wood's submissions are liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R.

---

[2] As mentioned, pro bono counsel has not yet been located, although the Court anticipates that a lawyer will be appointed soon.

Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (recognizing the "leniency" in treatment of pro se submissions, "necessarily requiring . . . thoughtful consideration [by the court] of all factual allegations, and not just expressly pled claims"); *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) (stating that the court construes pro se pleadings "'liberally and interpret[s] them to raise the strongest arguments that they suggest.'") (some internal quotation marks omitted; citation omitted); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

## B.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of

wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th.

15

Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  But, as noted, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

Ordinarily, when ruling on a Rule 12(b)(6) motion, courts do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).  *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ.*

16

*Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  In contrast, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom.*, *City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.,* 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  "As examples, 'courts

have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may only take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Parikh v. Frosh*, PX-22-110, 2023 WL 131043, at *5 (D. Md. Jan. 9, 2023), *aff'd in part, rev'd in part on other grounds*, *Parikh v. Brown*, 2024 WL 2764720 (4th Cir. May 30, 2024) (per curiam); *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n.2 (D. Md. 2013); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (concluding that a district court may "properly take judicial notice of its own records").

## C.

Under Rule 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

18

law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). "Applying that standard, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Aleman v. City of Charlotte*, 80 F.4th 264, 283–84 (4th Cir. 2023); *see Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, 277 (4th Cir. 2023); *Knibbs v. Momphard*, 30 F.4th 200, 206 (4th Cir. 2022); *Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The nonmoving party may avoid summary judgment by demonstrating that there is a genuine dispute of material fact that precludes the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, he or she must support the factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." But, where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

The Supreme Court has clarified that not every factual dispute will defeat a summary

judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322–24.   The nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."  *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 252; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).  "Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639,

20

640 (4th Cir. 1997) (citations omitted).  In short, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Reddy v. Buttar*, 38 F.4th 393, 403–04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Therefore, in considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations.  *Brown v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Knibbs*, 30 F.4th at 207, 213; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 218–19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007).  In the face of conflicting evidence, such as competing affidavits, a court must deny summary judgment, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

"[S]elf-serving affidavits offered by the non-movant can sometimes defeat summary judgment." *Pfaller v. Amonette*, 55 F.4th 436, 450 (4th Cir. 2022); *see Harrell v. DeLuca*, 97 F.4th 180, 187 (4th Cir. March 27, 2024) (recognizing that the self-serving declarations of nonmovants "can defeat summary judgment"); *Mann v. Failey*, 578 F. App'x 267, 273 n.2 (4th Cir. 2014) (per curiam) (unpublished but orally argued) ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [the nonmovant]

himself."); *see also* Fed. R. Civ. P. 56(c)(1)(A), (4).  In contrast, self-serving statements made by the movant are not sufficient.  *Pfaller*, 55 F.4th at 450 ("[H]ere it is the *movant . . .* who offers his own statements as the key evidence in support of summary judgment.  That is insufficient.") (emphasis in original); *Knibbs*, 30 F.4th at 222 (stating that "the dissent, like the district court, contravenes Rule 56 by accepting [the movant's] self-serving statements and reading the evidence in the light most favorable to *him*.") (emphasis in original).

"Courts in the Fourth Circuit may not consider inadmissible evidence on a motion for summary judgment." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) (citing *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)). Therefore, to the extent that evidence amounts to inadmissible hearsay, it "cannot create a factual dispute" for purposes of summary judgment.  *Stanton v. Elliott*, 25 F.4th 227, 237 n.7 (4th Cir. 2022) (citing *Md. Highways Contractors Ass'n*, 933 F.3d at 1251); *see also Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (observing that "hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment") (citation and internal quotation marks omitted).

### D.

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  *See* ECF 28.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450

(4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

Defendants Boettinger and Dubrawsky each submitted a Declaration in support of the Motion, setting forth their job duties in relation to Wood's allegations of delay and denial of adequate medical treatment. ECF 28-20, ECF 28-3. These documents are not intrinsic to Wood's

amended complaint and are provided to support defendants' position that they were not personally involved in the alleged delay and denial of adequate medical care. Therefore, the documents may only be considered in the context of a motion for summary judgment.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw*, 59 F.4th at 128; *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. *See Shaw* 59 F.4th at 128; *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of

material fact sufficient to defeat summary judgment." *Strag v. Bd. Of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at their peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader*

*v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 F. App'x at 638.

## IV.  Discovery

In his opposition to defendants' Motion, Wood has attached a verified Declaration under Rule 56(d) asserting that discovery is necessary to allow him to "properly justify" his opposition to the Motion.  ECF 33-1, ¶ 4.  Wood states that because he is proceeding pro se he has not had an opportunity to consult with a medical expert or to properly evaluate the credibility or completeness of the defendants' statement of facts.  *Id.* ¶¶ 7, 8.

In particular, Wood asserts that in order to establish deliberate indifference he needs discovery to explore the mindset and knowledge of the defendants and the extent of defendants' knowledge of the process used by Utilization Management in approving consultation requests and alternative treatment plans.  *Id.* ¶¶ 10, 13.  Wood also seeks to depose other witnesses, including prison staff, inmates, and medical providers, regarding the impact of his untreated injury on his daily life.  *Id*. ¶¶ 11, 12.  According to Wood, there is a genuine dispute of material fact regarding defendants' deliberate indifference to his serious medical needs and discovery, including expert evidence, is needed to allow him to further develop his claims.  *Id.* ¶ 16.

The defendants assert that discovery is not needed because Nurses Dubrawsky and Boettinger did not make any medical decisions and there is no need for any medical expert to "opine on the standard of care or any medical decision-making on their part." ECF 35 at 6. Further, they assert that the case is not complex and involves a "simple disagreement" with the medical treatment provided.  *Id.* at 5.

The court disagrees with defendants' assertion that discovery is not necessary to resolve the claims.  Wood alleges multiple delays in receiving both orthopedic follow up care and

physical therapy after his surgery.  Defendants state in their declarations that they are each responsible for reviewing consultation requests and gathering information to submit to the UM Medical Director.  Dubrawsky also asserts that if the UM Medical Director needs additional information, she will gather it.  Both defendants state that they can approve requests that do not require medical decision making, "such as routine post-op follow up."  ECF 28-1 at 3, 4.

Defendants had a role in the consultation and ATP approval process. It is not clear to what extent their actions may have caused alleged delay in processing requests and approvals for medical care and the scheduling of appointments for Wood with medical providers. Further, the Court has not been furnished with information concerning the process at the prison for approving medical care.  Moreover, the medical records have not been submitted by defendants. Therefore, it is not possible for the Court to determine the role of the defendants in regard to alleged delays in Wood's treatment.

Wood is entitled to an opportunity to explore these topics through discovery.  Finally, Wood has named YesCare Scheduler and YesCare John/Jane Doe Medical Providers as defendants.  To the extent that other individuals, including medical providers, may be responsible for the delay in treatment and/or the adequacy of treatment for Wood, discovery will allow Wood to determine the identity of these individuals and to request to file a second amended complaint, if warranted.

## V. Conclusion

Wood has reasonably articulated the reason he needs discovery and how the requested discovery will assist him in disputing defendant's contentions.  For the foregoing reasons, I shall deny defendants' Motion, without prejudice. Wood's request for discovery will be granted.

Upon the identification and appointment of counsel for Wood, the Court will issue a Scheduling Order.

An Order follows.

Date:  July 10, 2025                              _____/s/_____
                                                 Ellen L. Hollander
                                                 United States District Judge